VERONICA BULMAN, claimant-appellant, v. SANITARY FARM DAIRIES, employer, and IOWA NATIONAL MUTUAL INSURANCE COMPANY, insurance carrier, appellees.

No. 48760.

(Reported in 73 N.W.2d 27)

NOVEMBER 15, 1955.

REHEARING DENIED JANUARY 13, 1956.

John D. Randall, of Cedar Rapids, and Winfield A. White, of Marion, for appellant.

Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, for appellees.

SMITH, J.—Defendant Sanitary Farm Dairies of Cedar Rapids, Iowa, buys milk from farms for processing. It maintains six milk routes in the surrounding territory over which six regular haulers or drivers make daily trips collecting milk from the farmers along the routes. Each owns his own truck, starts from his own home in the morning and upon completion of his round delivers to the plant in Cedar Rapids the milk he has gathered and returns the truck to his home to be used for the next day's trip.

The regular route man or hauler is paid by defendant company "so much a hundred" for the milk he brings in, which amount is deducted from the farmers' checks. Each is allowed one day off each week and the days off are so staggered that no two fall on the same day.

Claimant's husband, Lester J. Bulman, of Springville, Iowa, was, on and prior to November 28, 1952, under employment as

relief truck driver to relieve the regular haulers on their respective days off. On each day he would go from his own home to the home of the regular driver whose turn it was to be relieved, get that man's truck, serve the route, deliver the milk he collected to the plant in Cedar Rapids and return the truck to the regular driver's home.

He of course had to furnish his own transportation between his own and the regular driver's home but by arrangement with the regular man he would put gas in his car to cover the going and returning trips and charge same to the truck he had used that day. That expense was thus borne by the regular hauler whose truck he had used, and not by the employer.

On November 28, 1952, Bulman relieved regular driver, Richard Sichra, whose route began and ended at his home in Belle Plaine, Iowa, approximately 36 miles west of Cedar Rapids, and was about 135 miles long with 21 or 22 stops at which to pick up milk. He started on his route from the Sichra home about 6:10 a.m. that day, unloaded his milk at the plant about 11:45 a.m., and returned the truck to the Sichra home and repossessed his own car about 1:30 or 2 p.m.

Several witnesses testify to his movements and conduct in Belle Plaine thereafter during the afternoon. He was visiting, drinking beer and one witness describes him thus as of about five o'clock: "I noticed he had been drinking * * *. His tongue was thick and he couldn't bring his words out plain. When he turned around and went back I would say he was staggering along the street."

There is much more along this line but it is pertinent here, probably, only as throwing light on Mr. Bulman's own concept of his relationship to his employment during the hours after returning the truck to the Sichra home.

This is material because the controversy grows out of disagreement over when his day of employment ended and whether the "going and coming" rule is applicable, for Mr. Bulman was killed in an automobile collision that evening about 7:30 on the road from Belle Plaine to Cedar Rapids, presumably on his way home to Springville, which is some distance northeast of Cedar Rapids and beyond Marion.

Claimant contends his injury arose out of and in the course of his employment. The contention was denied by the Deputy Industrial Commissioner and by the Commissioner. On appeal to the district court the Commissioner's decision was affirmed. She has now appealed to this court.

I. Our statute defines compensable injuries as those "arising out of and in the course of the employment." Section 85.3, Iowa Code, 1954. The phrase "arising out of" is universally held to require causal relationship between the employment and the injury. It received little discussion here by either party.

Defendants denied decedent was injured in the "course of his employment" and specially pleaded the proximate cause of his injuries was that he was under the influence of intoxicating liquor. The Commissioner held the evidence insufficient to sustain the special defense. We are of course statutorily foreclosed from reviewing that factual decision. Section 86.29, Iowa Code, 1954.

The Commissioner based his denial of compensation squarely on a finding that the fatal injury was not sustained "in the course of the employment", the second statutory requirement. That is the principal issue here and it necessitates a determination as to the nature of decedent's employment. Did his day's work end when he returned the truck to the home of the regular driver (Sichra, in this case); or was he covered on his route home?

Claimant argues there is no conflict of fact presented, that there was only a question of law, and that the Commissioner decided it erroneously. Defendants contend it was a question of fact, that the evidence supports the finding, and that the district court could not, under the statute, review it. Code section 86.29, supra.

But whether the Commissioner's decision was based on a finding of fact, or was a legal conclusion upon evidence not in conflict, we think the record shows without serious question that decedent's fatal injury did not arise in the course of his employment.

II. Ordinarily, the phrase "in the course of the employment", as used in our own and most workmen's compensa-

tion statutes, means within the period of the employment, at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto. 58 Am. Jur., Workmen's Compensation, section 212; Pace v. Appanoose County, 184 Iowa 498, 503, 504, 168 N.W. 916, 918, citing with evident approval McNicol v. Patterson Wild & Co., 215 Mass. 497, 102 N.E. 697, L. R. A. 1916A 306: " '* * * an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform' "; and citing also Bryant v. Fissell, 84 N. J. L. 72, 86 A. 458: " '* * * the words "in the course of" [relate] to the time, place, and circumstances under which the accident takes place.' " We think that a fair statement of the basis of allowing compensation under our statute respecting the phrase in question.

■ The courts have quite generally adopted the so-called "going and coming rule": that the hazards encountered by the employee in going to or returning from work are not ordinarily incident to his employment within the meaning of the phrase as used in the workmen's compensation law. 58 Am. Jur., Workmen's Compensation, section 217, citing, among many other cases from other jurisdictions, Marley v. Orval P. Johnson & Co., 215 Iowa 151, 244 N.W. 833, 85 A. L. R. 969. See Kyle v. Greene High School, 208 Iowa 1037, 1040, 226 N.W. 71.

There are of course exceptions to this general formula. Claimant, apparently conceding its validity as a general rule, relies on two exceptions, one of which at least the courts have recognized: 1. That the rule does not apply where the employer provides, or in some way pays for, the transportation; and 2. That because decedent's route was different, with different starting and finishing points each day, the rule is inapplicable, it being designed for use in cases where the workman has a fixed place of work.

III. We find no record support for the argument that the first of the above exceptions applies. The evidence seems expressly and without conflict to deny that the employer paid or agreed to pay any part of the going and coming expense of Mr. Bulman.

We cannot understand claimant's argument: "The (regular) route drivers being independent contractors and being paid by the farmers and being required to pay for their relief truck drivers, the Sanitary Farm Dairies * * * in hiring and paying relief truck drivers acted only as agent for the truck drivers."

And again, as if to clinch the point that the company was *not* the real employer and did *not* pay decedent's transportation expense, it is urged: "Route truck drivers, granting Bulman an allowance for gas, recognized their obligation to furnish transportation."

This argument would, if followed, compel dismissal of the proceeding which must be based on a contract of employment between claimant's decedent and defendant Sanitary Farm Dairies. It certainly cannot aid claimant here.

IV. The second claimed exception to the going and coming rule seems to be an effort to adopt and adapt the reasoning in Makins v. Industrial Accident Commission, 198 Cal. 698, 247 P. 202, 49 A. L. R. 411, and other cases.

It involves application of what may be called an "area of employment" rule. In the cited California case claimant was a newsboy who was injured while returning home after delivering his last paper. There was no discussion of the going and coming rule. His injury occurred on the opposite side of the street from the side along which his route ran. The court held he was still within the area of his employment. We are inclined to think the California court overlooked one logical element: the requirement that in order to be in the course of his employment the claimant must have been doing some part of the duty he was employed to perform.

Claimant's position here is stated in this paragraph from the brief and argument: "If a laborer is employed in a manufacturing plant, he then arrives at a certain hour and either punches the time clock or reports to his employer, and he works regular hours at a regular place and the only hazards to which he is subject are the hazards of the place of employment."

We think that statement does not correctly differentiate or state an exception to the going and coming rule. The addi-

tional hazards encountered while going to or returning from a place of work are not dependent on the elements named in the quoted argument. They may be just as great when the place of beginning and ending the day's work is fixed and constant as when it is different each day; or whether the work be on a route or at a certain fixed place.

Nor is the going and coming rule dependent on the extent of the hazards of travel. It is based rather on contract, express or implied. If the employer assumes the burden of the workman's coming and going expense, that is held to imply that the *time* of coming and going is a part of the time of employment. Or when the employer sends him on a special mission apart from his usual employment, the coming and going time of such mission is implied to be within the course of employment.

The situation here is not different by reason of the circumstance that decedent drove the Sichra route on that fateful November 28, which was not his regular day for that route. Mr. Sichra had exchanged his "day off" that week with another regular driver who also lived in Belle Plaine. That fact certainly did not make it a special mission nor extend the course of employment that one day to include his time returning home.

In short we find no theory upon which the Commissioner could have held Mr. Bulman's fatal injury arose in the course of his employment. We are cognizant of the fact that the compensation law is for the benefit of workers and is to be liberally administered to that end. But it must be administered by the application of logical and consistent rules or formulas notwithstanding its benevolent purpose. It cannot be made to depend on the whim or sympathetic sentiment of the current administrator or presiding judge. We apprehend every member of this court is sympathetic to claimant in the instant case. But the compensation statute is not a charity. It is a humanitarian law to be administered, not by sympathy, but by logical rules, evolved from the determination of many cases under literally countless factual variations. Compensation is to be paid by the employer (or his insurer) as a matter of contract, not as a

gratuity. It is payable only when the facts show the injury is within the contract—that it "arose out of and in the course of the contracted employment."

We have not paid our respects to all the cases cited by the parties, though we have examined all. We think the Commissioner's conclusion is correct under the record and it is affirmed.—Affirmed.

Oliver, C. J., and BLISS, GARFIELD, WENNERSTRUM, HAYS, THOMPSON, and LARSON, JJ., concur.

PETERSON, J., takes no part.