WATERHOUSE WATER CONDITION-ING, INC., Employer, and Westfield Insurance Company, Insurance Carrier, Appellants,

v.

Kathleen WATERHOUSE, Surviving Spouse of Creg R. Waterhouse, Appellee.

No. 95–2138.

Supreme Court of Iowa.

March 26, 1997.

J. Richard Johnson and Ann M. Cisco of White & Johnson, P.C., Cedar Rapids, for appellants.

Leslie E. Stokke and Richard Pundt, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

An employer and its insurer appeal the district court's judicial review ruling upholding the industrial commissioner's award of workers' compensation benefits to the surviving spouse and child of an employee who was killed in an accident while en route from his home to the employer's corporate office. We conclude that the district court did not err in upholding the industrial commissioner's determination that the employee's death arose out of and in the course of his employment. Accordingly, we affirm.

I. *Background facts and proceedings.* Creg Waterhouse was fatally injured on September 4, 1991, a business day, when he was struck by an automobile while riding his bicycle from his home near Marion, Iowa, to his employer's office in Hiawatha. The following facts, as shown by the record, are relevant to whether Creg's death was compensable under Iowa's workers' compensation statute. *See* Iowa Code ch. 85 and § 85.3(1) (1991).

At the time of his death, Creg was the president, manager, and a shareholder of Waterhouse Water Conditioning, Inc., a family-owned business started by Creg's father. The company sells and services water conditioners, rents out equipment, and sells bottled water and water purification systems. As manager of the business, Creg hired employees, set work schedules, answered\calls from customers twenty-four hours a day, went out on service calls during evenings, weekends, and holidays, and made all business decisions.

Creg's home and transportation arrangements reflected the continuous nature of his business duties. Because he frequently brought company work home with him, Creg equipped a spare room in his home with a desk, computer, and file cabinet, although he did not claim an income tax deduction for a home office. The company's telephone answering service relayed after-hours customer messages to Creg at his home. Creg used a company-provided van for service calls both during the day and after regular business hours and for transportation between home and the corporate business office. However, Creg was riding his bicycle to the office on the day of the accident because the company van was in an auto shop for repairs.

After Creg's death, his widow, Kathleen Waterhouse, filed a claim for workers' compensation benefits both as the surviving spouse and on behalf of Creg and Kathleen's minor son against the employer, Waterhouse Water Conditioning, Inc., and its workers' compensation insurance carrier, Westfield Insurance Company. *See* Iowa Code § 85.31. After an evidentiary hearing, a deputy industrial commissioner denied benefits, concluding that Creg's death did not arise out of and in the course of his employment.

After appeal by Kathleen, the industrial commissioner reversed that decision and awarded benefits to claimant Kathleen and the minor son. In so doing, the industrial commissioner determined that: (1) the "going and coming" rule, which precludes workers' compensation benefits for injuries occurring when a worker is going to or coming from the place of business, was inapplicable in this case; (2) the office in Creg's home constituted an alternate business premises, so that Creg's death occurred while he was traveling between the alternate business premises and the principal business premises; (3) concerning the "employer-provided conveyance" rule, the company van was unavailable on the day of the accident, and Creg's use of a different means of transportation did not remove his travel from the course of employment; and (4) at the time of the accident, Creg was transporting business items to the company's office.

The petitioners, employer and insurer, filed a petition for judicial review in district court. *See* Iowa Code § 17A.19. The district court upheld the industrial commission-

er's award of workers' compensation benefits to respondent-claimant Kathleen and the minor son, concluding substantial evidence showed that: (1) Creg's home functioned as a second work site, and therefore Creg's travel between his home and the company's office did not fall within the scope of the "going and coming" rule; and (2) concerning the "employer-provided conveyance" rule, the unavailability of the company van necessitated Creg's use of his bicycle on the day of the accident.

Creg's employer, Waterhouse Water Conditioning, and the employer's insurance carrier, Westfield Insurance Company, appealed. *See* Iowa Code § 17A.20.

■ II. *Standard of review.* Iowa Code section 17A.19 governs our review of this case. *See* Iowa Code § 86.26. We review the industrial commissioner's decision for errors of law. *Second Injury Fund v. Nelson,* 544 N.W.2d 258, 264 (Iowa 1995); *Squealer Feeds v. Pickering,* 530 N.W.2d 678, 681 (Iowa 1995). We may modify, reverse, or grant other appropriate relief if the agency's action is affected by error of law or is not supported by substantial evidence when the record is viewed as a whole. Iowa Code § 17A.19(8)(f); *Nelson,* 544 N.W.2d at 264.

III. *Award of benefits by industrial commissioner.* Petitioners, Creg's employer and the employer's insurance company, contend that the rulings by the industrial commissioner and the district court should be reversed. They argue that Creg's death is not compensable because the circumstances of this case fit within the contours of the "going and coming" rule and fail to satisfy any of the rule's exceptions. For the reasons that follow, we believe that the award of workers' compensation benefits by the commissioner to claimant Kathleen and the minor son was proper.

A. *The "going and coming" rule.*

■ 1. Iowa Code section 85.3(1) provides in relevant part:

Every employer, not specifically excepted by the provisions of this chapter, shall provide, secure, and pay compensation according to the provisions of this chapter

for any and all personal injuries sustained by an employee *arising out of and in the course of the employment* . . . .

(Emphasis added.) The claimant must prove by a preponderance of the evidence that the employee's injuries arose out of and in the course of the employment. *2800 Corp. v. Fernandez,* 528 N.W.2d 124, 128 (Iowa 1995). An injury "arises out of" the employment if there is a causal connection between the employment and the injury, and the injury occurs "in the course of" the employment when the injury and the employment coincide with regard to time, place, and circumstances. *Id.* We have summarized the latter requirement as follows:

[a]n injury occurs in the course of the employment when it is within the period of employment at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An injury in the course of employment embraces all injuries received while employed in furthering the employer's business and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment or be an act wholly foreign to his usual work. An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer.

*Bushing v. Iowa Ry. & Light Co.,* 208 Iowa 1010, 1018, 226 N.W. 719, 723 (1929), *quoted in Quaker Oats Co. v. Ciha,* 552 N.W.2d 143, 150 (Iowa 1996).

■ 2. Under the "going and coming" rule, subject to several exceptions, injuries which occur off the employer's premises while the employee is traveling to or from work are not compensable. *Medical Assocs. Clinic, P.C. v. First Nat'l Bank,* 440 N.W.2d 374, 375 (Iowa 1989); *Frost v. S.S. Kresge Co.,* 299 N.W.2d 646, 648 (Iowa 1980). How-

ever, the rule applies only to employees who have both a fixed place and fixed hours of work. 1 Arthur Larson, *The Law of Workmen's Compensation* § 15.00, at 4–3 (1994) [hereinafter Larson]; *see McMullin v. Dep't of Revenue,* 437 N.W.2d 596, 599 (Iowa App. 1989) (finding that "going and coming" rule did not apply to tax auditor whose work required him to travel to taxpayers' places of business and to work as many hours as necessary to complete the audit).

B. *Exception, concerning employer-provided conveyance, to "going and coming" rule.*

As a threshold matter, we assume, without deciding, that the "going and coming" rule applies here. However, Creg's death would still be compensable if an exception to the "going and coming" rule is established. *See Frost,* 299 N.W.2d at 648–49 (noting that several exceptions to the rule "extend the employer's premises under certain circumstances when it would be unduly restrictive to limit coverage of compensation statutes to the physical perimeters of the employer's premises"). The industrial commissioner found that two exceptions applied here: the "employer-provided conveyance" exception and the "home as a second work situs" exception.

■ We agree that substantial evidence supports the conclusions of the industrial commissioner and the district court that the employer-provided conveyance exception applies in this case. Thus, we need not discuss other possible exceptions to the "going and coming" rule in order to uphold the industrial commissioner's decision.

1. When there is a certain nexus between the employment and the employee's transportation to and from work, injuries sustained during the trip between home and the place of employment may be compensable. Two distinct rules may be distilled from this general principle.

■ First, the commute between home and work may be considered within the course of employment when the employer furnishes transportation in a conveyance under the employer's control:

If the trip to and from work is made in a truck, bus, van, car, or other vehicle *under the control of the employer,* an injury during that trip is incurred in the course of employment.

1 Larson § 17.11, at 4–209 (emphasis added); *see J.D. Dutton, Inc. v. Industrial Comm'n,* 120 Ariz. 199, 584 P.2d 1190, 1192 (1978) (holding that employee's injuries sustained during drive home in vehicle operated by supervisor occurred in the course of employment).

■ Second, the employee's trip between home and work may be considered within the course of employment when the employer furnishes the employee travel expenses or a company automobile:

The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey, or the special degree of inconvenience or urgency under which it is made, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed.

1 Larson § 16.00, at 4–196.

[I]n the majority of cases involving a deliberate and substantial payment for the expense of travel, or the provision of an automobile *under the employee's control,* the journey is held to be in the course of employment.

*Id.* § 16.31, at 4–208.62–.63 (emphasis added); *see Industrial Comm'n v. Lavach,* 165 Colo. 433, 439 P.2d 359, 361 (1968) ("[w]here the employer agrees to provide its employee with the means of transportation ... to and from work, the scope of employment inferentially enlarges to include the employee's transportation"); *Eslinger v. F & B Frontier Constr. Co.,* 618 S.W.2d 742, 744 (Tenn.1981) ("where transportation is furnished by an employer as an incident of the employment, an injury suffered by the employee while going to or returning from his work in the vehicle furnished arises out of and is within the course of the employment").

2. Although both rules are premised upon the employer's involvement with the employee's trip between home and work, the reasons underlying the two rules are different

and become significant under certain circumstances. The rationale for the rule regarding transportation between home and work in a conveyance under the employer's control is that the risks of the employment extend to the transportation operated by the employer. 1 Larson § 17.11, at 4–220; *see id.* § 16.31, at 4–208.62 n. 53 ("a bus under the employer's control, for example, can be conceived of as somewhat like an extension of the premises, carrying with it the risks of the employment"). We invoked this principle in *Johnson v. Farmer,* 537 N.W.2d 770, 772 (Iowa 1995), where we pointed to a supervisor's choice of the route and operation of the vehicle on behalf of the employer in concluding that the employee's injuries sustained during that trip were within the course of employment. The second rule reflects the importance of the travel itself as part of the service performed by the employee. 1 Larson § 17.11, at 4–220. Thus, travel between home and work is not compensable when an employee forgoes transportation in a conveyance controlled by the employer to use his own vehicle, because the employee is not subject to the hazards of a facility of the employer. *Id.* § 17.13, at 4–221–222; *see LeBlanc v. Travelers Ins. Co.,* 68 So.2d 910, 912–13 (La.App.1953) (holding that when employee rode his own bicycle to work rather than riding in foreman's vehicle, death resulting from accident while en route to job was not compensable). In contrast, if the employer has furnished the employee with travel expenses or a company vehicle, the employee's substitution of an alternate mode of transportation does not change the status of the journey itself as part of the service compensated for and therefore has no effect on compensability. 1 Larson § 17.13, at 4–222; *see Stadler Fertilizer Co. v. Bennett,* 124 Ind.App. 524, 119 N.E.2d 26, 28 (1954) (finding that when employee used his own vehicle, with employer's acquiescence, because company truck was in shop for repairs, journey between job and home was compensable).

3. Although we have not previously had occasion to address the second rule concerning the furnishing of transportation by an employer stated above, we have recognized, under certain circumstances, that when the special demands of a job make it incumbent upon the employee to have ready transportation, travel to and from work may be considered within the course of employment. In *Medical Associates Clinic,* 440 N.W.2d at 376, we upheld the industrial commissioner's ruling that an employee-physician's death in an automobile accident, while en route from his home to a hospital, was compensable because his job for his employer required that he bring his own car to work so that he could travel between several hospitals. That case did not implicate an exception to the "going and coming" rule based on the furnishing of transportation by the employer; however, we believe the principle underlying *Medical Associates Clinic* is similar to the rationale for the rule concerning the provision of travel expenses or a company vehicle by the employer to the employee.

4. In the present case, while the parties discuss the applicability of the first rule (transportation in conveyance under employer's control), we believe that it is the second rule (travel expenses or company vehicle provided by employer) that governs here. The evidence demonstrates that the employer provided a company van for Creg's use rather than furnishing transportation in a conveyance under the company's control. Creg's trips to and from work were of substantial importance to his employer, because the employment required Creg's readiness to provide service to customers at all hours. The van contained the tools and equipment Creg needed to respond to customers' problems. Therefore, we conclude that the second rule is applicable in this case.

■ We believe it significant that Creg's employer and the employer's insurance carrier do not argue that Creg's death would not be compensable if he had been traveling in the company van at the time of the accident. Instead, they assert that Creg's use of a bicycle as a substitute means of conveyance removes this case from the ambit of the employer-provided conveyance exception. We are not persuaded by this argument. The employer and insurance carrier offer no authority to support their assertion, and we see no reason why Creg's use of a bicycle should preclude compensability here. As noted above, the employee's substitution of a

different method of transportation does not affect compensability in situations where the employer provides a company vehicle for the employee's use. If not for the unavailability of the company van, Creg would not have had to seek another way of getting to the office. The evidence showed that the employer was aware of Creg's use of a bicycle as transportation to and from the company office on several prior occasions, and it offered no objection. Even if, as the employer and insurance carrier urge, cases could arise in which the mode of transportation presents unacceptable risks, this is not such a case. Creg was an avid and skilled bicyclist.

We conclude that the industrial commissioner did not err in applying the employer-provided conveyance exception in this case.

IV. *Disposition.* In view of our above conclusion, we need not discuss other issues raised by the parties, including the exception to the "going and coming" rule involving the home as a second business situs. We affirm the judgment of the district court.

**AFFIRMED.**